# 24-1396

## UNITED STATES COURTS OF APPEALS
## FOR THE SECOND CIRCUIT

---

ALICE SOSA,
Plaintiff-Appellant,

V.

NEW YORK CITY Department of Education Marcy Berger,
In her official and individual capacities,
Defendants-Appellees.

---

On Appeal from the United States District Courts
For the Eastern District of New York

---

Reply Brief of Appellant Alice Sosa

Alice Sosa, Pro Se
204-12 45 RD
Bayside NY 11361
646-409-2045

January 16 2025

# TABLE OF CONTENTS

Table of Contents ............................................................2

Table of Authorities................................................. 3

Statutes .....................................................................3

Rules .........................................................................3

Statement of Subject Matter and Appellate Jurisdiction ............................4

Statement of Appellate Jurisdiction ....................................4

Filing Date Establishing the Timeliness of the Appeal.............................4

Final Judgment ..........................................................4

Statement of the Issues Presented for Review ...........................................5

Statement of the Case ..........................................................7

Statement of Facts .........................................................8

Summary of the Argument .........................................10

Argument ..................................................................11

Summary of the Argument .........................................16

Argument...................................................................17

Summary of the Argument .........................................21.

Argument ..................................................................22

Summary of the Argument .........................................26

Argument ..................................................................27

Conclusion ...............................................................32

Certificate of Compliance ..........................................33

TABLE OF AUTHORITIES

1.  Adams v. City of New York, cited as 837 F. Supp. 2d 127
2.  Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006)
3.  Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 134 (2d Cir. 2008)
4.  Bowen-Hooks v. Barnes & Noble
5.  Clark County School District v. Breeden, 532 U.S. 268 (2001)
6.  Crawford v. Metro Nashville Public Schools, 555 F.3d 242 (6th Cir. 2009),
7.  Doe v. Taylor Independent School District, 15 F.3d 435 (5th Cir. 1994)
8.  EEOC v. Ford Motor Co., 752 F.3d 634 (6th Cir. 2014)
9.  Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993)
10. Lewis v. N.Y.C. Transit Auth., 12 F. Supp. 3d 418, 451-52 (E.D.N.Y. 2014)
11. Matter of Pell v. Board of Education (1979)
12. Mcdonnell Douglas Corp. V. Green
13. Morris v. Oldham County Fiscal Court, 201 F.3d 784 (6th Cir.),
14. Murray V. Visiting Nurse Service of New York
15. New York City Human Rights Law v Adams, 837 F. Supp.2d at 127
16. Northern & Santa Fe Railway Co.v. White, 548 U.S 53 (2006)
17. Raymond v. Northside Independent School , 928 F.3d 380 (5th Cir. 2019)
18. Smith v. City of Jackson, 544 U.S. 228 (2005)

STATUTES

28 U.S.C. § 1331
42 U.S.C. § 12101
28 U.S.C. § 1291

RULES

FRAP 28(a)(4)
FRAP 28(a)(5)
FRAP 28(a)(6), LR 28.1
FRAP 28(a)(7)
FRAP 28(a)(8)
FRAP 28(a)(9)
FRAP 28(a)(10)

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

The Appellant, Alice Sosa, is appealing a Memorandum and Order issued by Judge Pamela K. Chen of the United States District Court for the Eastern District of New York, dated April 22, 2024, in the case Sosa v. New York City Department of Education and Marcy Berger. Case No. 1:18-cv-411.

**(a) Subject Matter Jurisdiction:** The District Court has jurisdiction under 28 U.S.C. § 1331 due to the allegations of violations under the Americans with Disabilities Act (ADA),, 42 U.S.C. § 12101 et seq. as well as references to the New York State Human Rights Law and the New York City Human Rights Law. (NYSHRL), N.Y. Exec. Law § 290 et seq., and the New York City Human Rights Law (NYCHRL), N.Y.C. Admin. Code § 8-102 et seq. The Appellant claims retaliatory actions by the Appellees following a complaint to the New York City Commission on Human Rights.(CCHR) filed in January 2017, which supports the federal nature of her claims.

.

**Appellate Jurisdiction**: The appellate court has jurisdiction over this appeal under 28 U.S.C. § 1291, as the Memorandum and Order constitutes a final judgment, resolving all claims against all parties.

**Timeliness of Appeal:** The Appellant filed her notice of appeal on May 22, 2024, within the 30-day limit established by Federal Rule of Appellate Procedure 4(a)(1)(A) following the April 22 Order.

**Final Judgment:** The April 22, 2024, order is considered a final judgment as it resolves all claims in the case, leaving no further issues to be addressed.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

The Statement of the Issues Presented for Review outlines several key legal questions regarding a case involving Plaintiff Alice Sosa, focusing on allegations of retaliation and discrimination under various laws. Here's a summary of the highlighted issues:

1. **Insufficient Evidence:** Whether the District Court wrongly concluded that there wasn't enough evidence to create a genuine dispute regarding Sosa's claims of retaliation under the ADA, NYSHRL, and NYCHRL.

2. **Adverse Employment Action:** Whether the District Court erred in its assessment of a bathroom policy as an adverse employment action that would deter a reasonable employee from making a discrimination complaint.

3. **Burden-Shifting Framework:** Whether the District Court misapplied the McDonnell Douglas framework in reviewing whether the Defendants provided legitimate reasons for their actions against Sosa, including placing disciplinary letters in her file and denying requested accommodations.

4. **Standard Under NYCHRL:** Whether the District Court incorrectly dismissed Sosa's retaliation claim by not considering the lower evidentiary standard under the NYCHRL.

5. **Disciplinary Letters:** Whether the District Court erred in ruling that the placement of three disciplinary letters in Sosa's personnel file did not constitute adverse employment actions.

6. **Denial of Accommodations**: Whether the District Court made an error in its ruling concerning the denial of accommodations that Sosa requested.

7. **Co-Teaching Arrangement**: Whether the District Court made an error in its decision regarding the co-teaching arrangement involving Sosa.

## STATEMENT OF THE CASE

Alice Sosa, a special education teacher, appealed a ruling from the U.S. District
Court for the Eastern District of New York. She brought claims under Title VII and
the ADA for retaliation related to her race and disability, starting with a complaint
to the New York City Commission on Human Rights in January 2017. Sosa's
lawsuit included several claims but only ADA, NYSHRL, and NYCHRL
retaliation claims based on adverse employment actions committed by the
Appellees

**DECISION:**

Judge Pamela K. Chen granted summary judgment to the defendants, finding that
Sosa failed to show genuine issues of material fact regarding her retaliation claims.
The court dismissed her new allegations, determining that the conduct experienced
by Sosa did not meet the legal standard for retaliation.

**KEY FACTS**

Sosa has worked for the New York City Department of Education since 1996.
She filed a discrimination charge with the CCHR in January 2017.
Sosa alleges that the defendants retaliated against her through unfounded
disciplinary letters, denied accommodations, and adverse changes to her workplace
autonomy.

**ISSUES IN DISPUTE**

Sosa argues that the defendants' motivations are disputed and that the adverse
actions were directly linked to her engagement in protected activities.

7

## STATEMENT OF FACTS

**1. Employment History:** Alice Sosa has worked for the New York City Department of Education (NYC DOE) since September 1996, starting as a paraprofessional and becoming a special education teacher in September 2003. She currently teaches in a District 75 program for students with autism and significant cognitive challenges.(Record, Dkt. 1-1 at 5).

**2. Background of Claims:** Ms. Sosa's allegations of retaliation and discrimination stem from a complaint filed with the City Commission on Human Rights (CCHR) against NYC DOE in January 2017. (Defs.' Rule 56.1 Statement, Dkt. 93 ¶ 7). At that time, Marcy Berger was the head administrator at her school, where she worked with around 15 other teachers.(Record, Dkt. 1-1 at 5).

**3. Retaliation Claims:** Ms. Sosa cited four instances of alleged retaliation:
    Disciplinary letters added to her file.
    Partial denial of her request to avoid three consecutive classes.
    Delay in assigning a co-teacher for the 2017-2018 year.
    Changes to the bathroom policy.

The court found only the bathroom policy change constituted an adverse action, justified by the NYC DOE for student safety. Ms. Sosa did not effectively challenge this justification, leading to summary judgment for the Appellees regarding her ADA and NYSHRL retaliation claims.

**4. Disability and Accommodations:** Ms. Sosa has a recognized disability requiring specific accommodations, which she claims the NYC DOE inadequately addressed. They asserted scheduling adjustments had been made, but Sosa contends no changes were implemented. She faced disciplinary actions after absences and reporting misconduct, arguing these were retaliatory linked to her discrimination complaints.(Pl.'s Dep., Dkt. 92-1 at 14:10–20).

**5. District Court Findings:** The District Court determined that the NYC DOE's actions were not retaliatory or motivated by her protected activities.

**6. Additional Context:** In February 2017, (Defs. 56.1, Dkt. 93 ¶ 25). Ms. Sosa was absent for two days without logging her absence, resulting in a disciplinary letter in her file. Additional disciplinary letters followed for alleged misconduct. While Sosa argues these actions were retaliatory, the District Court found no evidence of retaliatory intent. The NYC DOE also denied her requests for further accommodations.

## SUMMARY OF THE ARGUMENT

### Overview Of Disciplinary Letters

Ms. Sosa appeals the dismissal of her retaliation and discrimination claims under the Americans with Disabilities Act (ADA) and New York laws, asserting that the Appellees violated her rights as a disabled employee following her complaint to the New York City Commission on Human Rights (CCHR).

After filing her complaint in January 2017, Ms. Sosa was subjected to three public disciplinary letters issued by the Appellees in February, March, and April 2017. Each of these letters contained false and misleading information, and the close proximity between her protected activity and these adverse actions strongly suggests retaliatory intent. The evidence presented by Ms. Sosa directly counters the Appellees' claims of lacking intent, clearly illustrating their discriminatory conduct toward her for engaging in protected activity.

While Ms. Sosa acknowledges that these disciplinary letters have negatively impacted her mental and emotional state, this does not detract from her core assertion: the Appellees' behavior was both retaliatory and discriminatory. By establishing a clear causal link between her protected complaint and the subsequent adverse actions taken against her, Ms. Sosa demonstrates that the Appellees' conduct was unjustified and unlawful, warranting judicial intervention.

## ARGUMENT

## II. Disciplinary Letters

Ms. Sosa respectfully contends that the disciplinary actions taken against her were retaliatory and discriminatory, arising directly from her engagement in protected activities, specifically her complaint filed with the New York City Commission on Human Rights (CCHR) in January 2017. Each of the three disciplinary letters will be examined in isolation to effectively counter the Appellees' claims of non-retaliation while collectively illustrating a clear pattern of causation and intent to retaliate.

The close timing between Ms. Sosa's protected activity and the adverse actions specifically, the letters issued in February, March, and April 2017, establishes the necessary causal connection for her retaliation claim. Under the less stringent standard applicable to the New York City Human Rights Law (NYCHRL), as established in **Adams, 837 F. Supp. 2d at 127, claims that meet federal and state standards inherently satisfy the NYCHRL (see Lewis v. N.Y.C. Transit Auth., 12 F. Supp. 3d 418, 451-52 (E.D.N.Y. 2014).**

Significantly, formal reprimands can constitute adverse actions, even when they do not result in immediate loss of wages or benefits. This principle, reinforced in **Bowen-Hooks v. Barnes & Noble**, recognizes that such reprimands can diminish an employee's opportunities for promotions, raises, and bonuses, thus creating a climate of fear regarding job security.

11

### III. First Letter (February 2017)

The first disciplinary letter, received by Ms. Sosa in February 2017, includes inaccuracies regarding her reported absences. The Appellees allege that Ms. Sosa failed to report her absence on February 17, 2017; however, **Exhibit A** confirms that she accurately reported her absences on both February 16 and 17. Additionally, **Exhibit B** reveals discrepancies in the SubCentral System, where Ms. Sosa entered three days of absences but only two were recorded. This discrepancy suggests that the issue lies not with Ms. Sosa, but with the reporting system itself.

During the disciplinary hearing, Appellee Berger acknowledged Ms. Sosa's account and admitted to having no understanding of what had gone wrong. This recognition undermines the Appellees' claims of lacking retaliatory intent. Following the framework established in **McDonnell Douglas Corp. v. Green, employers** are required to provide legitimate, non-discriminatory reasons for adverse actions taken against employees engaging in protected activities.

**Conclusion for the First Letter:** The evidence surrounding this letter clearly indicates a retaliatory motive by the Appellees, especially considering the timing of their actions following Ms. Sosa's discrimination complaint.

### IV. Second Letter (March 15, 2017)

The second reprimand claims that Ms. Sosa engaged in "frequent and lengthy interruptions" during meetings that lasted only 20 to 25 minutes. This assertion merits scrutiny given that Ms. Sosa's participation had previously been recognized

12

without complaints **(Exhibit Dep. Tr. 54:3-9)**. The lack of prior issues not only raises doubts about the validity of these allegations but also suggests that the timing may be more reflective of retaliatory intent rather than genuine concern for workplace conduct.

**Conclusion for the Second Letter:** The unsubstantiated claims against Ms. Sosa must be viewed within the larger context of her protected activity and the timing of this reprimand. As articulated in **Burlington Northern & Santa Fe Railway Co. v. White,** such actions can be construed as retaliatory if they would deter a reasonable person from participating in protected activities.

## V. Third Letter (April 21, 2017)

Judge Chen's demand for direct comparator evidence neglects the unique context of Ms. Sosa being the sole African American teacher with a disability at her school **(Exhibit O)**. Comparisons can indeed be drawn between Ms. Sosa, who has filed complaints of discrimination and retaliation, and her colleague, Ms. Weber. Even despite the claims that they are not similarly situated, both face comparable professional responsibilities and stresses during working hours.

For instance, Weber's disciplinary letter alleges that she used a loud, argumentative tone, sparking intervention from staff due to perceived disruptions, whereas Ms. Sosa's disciplinary letter similarly mentions a loud, argumentative tone but lacks any specifics regarding screaming. Witte's written phone **(Exhibit H)** confirms that

13

while Ms. Sosa was upset, she did not raise her voice; Nazreem similarly observed that Ms. Sosa was upset but not aggressive **(Exhibit N)**. In contrast, Weber's outbursts were deemed severe enough to necessitate a student's removal from the situation, indicating a more serious disruption.

Furthermore, Ms. Sosa took proactive steps to challenge the Appellees' misconduct by contacting her Union president **(Exhibit PP)** and filing a Step 1 grievance. Yet, Appellees Berman and Berger stated that the letters were non-grievable, effectively hindering Ms. Sosa's ability to contest the allegations and violating her due process rights.

**Conclusion for the Third Letter:** The differential treatment between Ms. Sosa and Ms. Weber suggests bias and inconsistent enforcement of disciplinary standards, particularly regarding Ms. Sosa's engagement in protected conduct.

## VI. Overall Argument for Retaliation

An analysis of each disciplinary letter reveals significant inconsistencies that substantiate Ms. Sosa's retaliation claims. The timing, context, and nature of these actions illustrate a discernible pattern of retaliatory intent linked to her protected activities. To counter potential arguments that these actions were justified, it is crucial to highlight their baseless nature and discriminatory underpinnings. Given the less stringent standards of the NYCHRL, the available evidence forms a compelling case for Ms. Sosa's retaliation claims, warranting judicial intervention.

In addition to the legal ramifications, it is essential to recognize the emotional toll that these actions have taken on Ms. Sosa. The distress from being unfairly

reprimanded complicates her already challenging experience as a disabled employee, highlighting the need for judicial oversight in ensuring her rights are upheld.

## SUMMARY OF THE ARGUMENT

### I. Background on Medical Leave and Accommodation Request

Ms. Sosa requested ADA accommodation before the start of the 2016-2017 school year due to documented physical and mental health conditions, specifically anxiety and depression. Rather than engaging in constructive dialogue regarding her proposed accommodations, the Appellees weaponized her request, demonstrating a pattern of discriminatory practices related to her need for support.

Although the Appellees assert they partially approved her accommodation by allowing a preferred teaching schedule on all days except Thursday, this arrangement raises significant questions about its sincerity and effectiveness. This superficial modification failed to meet Ms. Sosa's essential requirements as supported by legal precedents from the Americans with Disabilities Act (ADA).

In summary, the Appellees' actions reveal a clear pattern of discrimination linked to Ms. Sosa's legitimate requests for essential accommodations. The timing of adverse actions following her disclosures further suggests retaliatory intent.

16

## ARGUMENT

### II. Accommodation Violations

Ms. Sosa asserts that the Appellees violated the ADA by failing to provide reasonable accommodations for her disability and retaliating against her for disclosing her condition. What the Appellees described as an accommodation was, in reality, their standard schedule for P4@213, which was uniformly applied to all teachers, as evidenced by schedules dating back to **2013**. **Exhibit T** supports this claim, showing Ms. Sosa subjected to the same high-stress arrangement that did not address her specific health needs.

### III. Factual Background

During the 2016-2017 school year, after submitting her request for a structured schedule to manage her anxiety and depression, Ms. Sosa faced numerous adverse employment actions. These included the denial of necessary schedule changes. The Appellees' rigid approach not only exacerbated her medical conditions but also contributed to a hostile work environment.

### IV. Retaliation Claims

While the Appellees argued that Ms. Sosa's claims of failure to accommodate were unfounded, especially in light of her formal discrimination complaint filed with the Commission on Human Rights and Opportunities (CCHR) **in January 2017,** and retaliation can occur merely from disclosing one's disability status, irrespective of a formal complaint. The continued enforcement of a burdensome schedule into the 2017-2018 school year clearly suggests a retaliatory response to her disclosure. This is further evidenced by **Exhibit S,** where Ms. Sosa described her ongoing struggles: "I received my accommodation letter on **9/2018.** As you are aware of my

17

disabilities, I have repeatedly requested a schedule where I would not teach three periods in a row."

**The ADA Amendments Act of 2008** clarifies that employees need not demonstrate severe restrictions to receive protections. The enforcement of adverse scheduling conditions following Ms. Sosa's disclosure presents substantial grounds for a claim of retaliation.

## V. Failure to Engage in the Interactive Process

The Appellees neglected to engage in the required interactive process mandated by the ADA. Instead, they imposed a rigid schedule that overlooked Ms. Sosa's specific health needs, as established in **Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 134 (2d Cir. 2008).** Their failure to initiate meaningful dialogue not only undermined Ms. Sosa's rights but also negated their legal obligations.

## VI. Disparities in Accommodation Practices

A thorough examination of accommodation practices at the school has revealed notable disparities:

**Exhibit W:** Colleagues such as **Kash** and **Vicky** were granted extra prep time, indicating a deviation from standard scheduling procedures.
**Exhibit U:** Employees like **Witte** and **Rodriguez** were assigned schedules that avoided the demanding requirement to teach three consecutive periods, reflecting a willingness to accommodate specific health needs.

18

In contrast, Ms. Sosa, the only teacher requesting a modification due to a disability, was assigned a schedule with the same three consecutive periods as her able-bodied peers, including **Jasmine** and **Weber (Exhibit T).** This inconsistency raises significant concerns about discriminatory practices, especially given the timing of Ms. Sosa's disability disclosure. The apparent unequal treatment of employees with disabilities undermines the school's commitment to creating an inclusive environment, where accommodations are provided fairly.

## VII. Emotional and Physical Impact of Scheduling

The mandated schedule requiring Ms. Sosa to teach three consecutive periods inflicted significant harm on her mental and physical well-being, negatively affecting her teaching effectiveness. This scenario underscores the inadequacy of the accommodation provided and signals a disregard for her overall health, as emphasized in **EEOC v. Ford Motor Co., 752 F.3d 634 (6th Cir. 2014).**

## VIII. Conclusion

In conclusion, Ms. Sosa was subjected to an unmodified, demanding schedule that failed to address her medical needs, leading to significant emotional and physical distress. The Appellees' inadequate response to her accommodation request exemplifies a blatant disregard for her well-being, raising serious concerns about both discrimination and retaliation linked to her disability.

The evident discrepancies in how the Appellees supported Ms. Sosa compared to her colleagues indicate a pattern of unequal treatment that violates ADA principles. This unjust treatment necessitates accountability and reinforces the critical need for adherence to the ADA. Ensuring fair treatment for all employees, especially those

with disabilities, is a legal obligation and a moral imperative for fostering equity and inclusivity in the workplace.

## SUMMARY OF THE ARGUMENT

### I. Background on Co-teaching

This argument examines whether the Appellees' failure to provide the Appellant, Ms. Sosa, with a co-teaching arrangement during the 2017-2018 school year constitutes discrimination under the Americans with Disabilities Act (ADA). This denial is particularly concerning given that the co-teaching arrangement was readily available to all other teachers during critical, high-stress testing periods.

### II. Unlawful Discrimination or Retaliation

The argument will also investigate whether requiring Ms. Sosa to choose between her ADA accommodations and her participation in the co-teaching initiative constitutes unlawful discrimination or retaliation for asserting her rights under the ADA.

### III. Miscommunication Defense

Finally, the Appellant will evaluate whether the Appellees' defense, which claims that the denial of co-teaching was merely due to miscommunication, provides sufficient justification to absolve them of liability under the ADA.

<u>ARGUMENT</u>

## I. Co-Teaching Elements Establishing Discrimination

Ms. Sosa is a qualified educator capable of fulfilling her responsibilities despite her recognized disabilities—namely, anxiety and depression. This situation underscores the necessity for reasonable accommodations under the Americans with Disabilities Act (ADA).

## II. Denial of Reasonable Accommodation

During the 2017-2018 school year, the Appellees failed to provide Ms. Sosa with a co-teaching arrangement that was offered to her colleagues, especially during a high-stress testing period. They attributed this denial to alleged miscommunication, raising serious concerns regarding their commitment to ADA-mandated obligations, as highlighted in **Raymond v. Northside Independent School District, 928 F.3d 380 (5th Cir. 2019),** where the court emphasized that miscommunication should not obstruct the provision of necessary accommodations.

## III. Supporting Evidence for Discrimination

1. Documented Emails:

   On September 13, 2017 **(Exhibit AA),** an email stated, "for the first semester, the coverage teacher will plan the lesson and the classroom teacher (Ms. Sosa) will assess their students…"

   On September 14, 2017 **(Exhibit CC and T),** further correspondence indicated that Ms. Sosa's schedule did not include co-teaching, even as adjustments were made for other teachers.

Notably, Appellee Berman explicitly informed Ms. Sosa that she could not have both co-teaching and ADA accommodations, indicating a disregard for her needs.

### 2. Union Communication:

An email from the United Federation of Teachers **(UFT) (Exhibit BB)** revealed that Principal Berger hesitated to discuss co-teaching due to pending legal matters with Ms. Sosa.

### 3. Union Deposition:

A UFT representative confirmed in a deposition **(Exhibit BB, lines 6-10)** that there were issues in getting a co-teacher for Ms. Sosa, corroborating her claims of discriminatory denial.

### IV. Contradictory Testimonies and Intent

While Appellee Berman claimed that Ms. Sosa was not interested in co-teaching, this assertion contradicts documented requests for assistance. This aligns with legal principles established in **Smith v. City of Jackson, 544 U.S. 228 (2005),** where the perceived lack of interest does not absolve an employer's duty to provide accommodations.

### V. Impact on Job Performance

The absence of a co-teaching partner severely disadvantaged Ms. Sosa compared to her non-disabled peers during critical testing periods. This lack of support impaired her ability to manage workplace stress and fulfill her teaching obligations, resonating with findings in **Doe v. Taylor Independent School District, 15 F.3d**

**435 (5th Cir. 1994)**, which underscored the detrimental effects of ADA non-compliance on job performance.

## VI. Adverse Action

The requirement for Ms. Sosa to choose between her ADA accommodations and participation in co-teaching constitutes an adverse action, supported by case law in **Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006)**, which clarified that adverse actions can include any action that may dissuade a reasonable worker from filing or supporting a charge of discrimination.

## VII. Inequitable Treatment

If other teachers received co-teaching support while Ms. Sosa did not, this disparity indicates discriminatory practices in resource allocation, as established in **Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993),** emphasizing that workplace discrimination need not be overt to be actionable.

## VIII. Support from Email Evidence

Email documentation confirms that co-teaching was intended as support for all educators during critical periods, reinforcing Ms. Sosa's argument for equitable treatment under the ADA. The absence of this support illustrates a failure to adhere to ADA guidelines, as highlighted in **Raymond v. Northside Independent School District, 928 F.3d 380 (5th Cir. 2019),** indicating systemic discrimination.

## IX. Addressing Counter Arguments

While the Appellees may argue that the initial denial of co-teaching was due to miscommunication, this contention is effectively countered by substantial evidence demonstrating a consistent pattern of discriminatory behavior against Ms.

Sosa—an issue also echoed in Smith, where miscommunication does not negate an employer's ADA obligations.

## SUMMARY OF THE ARGUMENT

**Bathroom Policy**

The Appellees defended the bathroom policy change by claiming it was essential for student safety. However, Ms. Sosa asserts that this rationale is pretextual, raising legal issues under the ADA, employment discrimination and retaliation laws. The court acknowledged that Ms. Sosa established a prima facie case, indicating the policy disproportionately affected her compared to her colleagues, suggesting possible discrimination or retaliation.

The court ruled that an incident involving a staff member leaving students unattended was insufficient evidence to support Ms. Sosa's claims. However additional evidence demonstrates that the stated rationale served merely as a cover for retaliation, particularly following her discrimination complaint.

## ARGUMENT

### I. Bathroom Policy

This appeal addresses the significant and detrimental impact of the Appellees' recent change to the bathroom policy, which is argued to be discriminatory and retaliatory against Ms. Sosa. The evidence indicates that this policy change disregarded Ms. Sosa's mental health and medical needs were implemented in direct response to her earlier complaints about discrimination.

### II. Engagement in Protected Activity

Ms. Sosa engaged in protected activity by filing a discrimination complaint in January 2017. This action is protected under employment law, shielding employees who oppose discriminatory practices **(see Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006).** This established precedent affirms that employees are entitled to protection when reporting violations of their rights.

### III. Adverse Employment Action

The change to the bathroom policy constitutes an adverse employment action with significant implications for Ms. Sosa's mental well-being. A physician's note submitted **(Exhibit E)** indicates that this policy exacerbated her existing anxiety and depression. The case Murray v. Visiting Nurse Service of New York demonstrates that modifications to workplace policies can negatively affect employees' health and productivity, setting a clear precedent for the claim that such changes can amount to discrimination.

### IV. Causal Connection

A crucial factor in establishing retaliation is the temporal connection between protected activity and adverse action. In this case, Ms. Sosa's disclosure of her

medical needs was made just mere days before the bathroom policy change, suggesting that the policy was a direct retaliation for her health disclosures. The Supreme Court in **Clark County School District v. Breeden, 532 U.S. 268 (2001),** recognized that close temporal proximity between protected activities and adverse actions may support an inference of causation.

## V. Lack of Justification for Policy Change

The Appellees claim that the recent policy change was implemented due to safety concerns for students; however, this justification is undermined by a lack of substantial evidence. Assistant Principal Berman testified that there were no documented safety issues prior to this policy implementation **(Exhibit II: Dep. Tr. 73:16-21).**

The sudden introduction of a safety rationale, which the Appellees failed to communicate effectively, raises serious questions about the authenticity of their motives. Furthermore, Matter of Pell v. Board of Education (1979) dictates that any policy changes must be supported by appropriate documentation outlining the necessity of those changes. The absence of such documentation in this instance casts further doubt on the legitimacy of the Appellees' stated reasoning.

## VI. Disproportionate Application of the Policy

An examination of Principal Berger's communications **(Exhibits KK and N)** reveals that this new policy disproportionately targeted Ms. Sosa, while other faculty members faced no similar restrictions when accessing restroom facilities. Colleagues' statements (Exhibits MM) confirm their lack of issues in accessing restrooms, further underscoring the inequity in the Appellees' actions.

The Appellees characterize the bathroom policy change as a minor inconvenience, asserting that such a trivial change would not deter a reasonable employee from filing or supporting a discrimination complaint. To support this argument, they reference relevant case law, including Rivera v. Rochester Genesee Regional Transportation Authority (743 F.3d 24 (2d Cir. 2014) and Freud v. New York City Department of Education (No. 22-879, 2023 U.S. App. LEXIS 10283 (2d Cir. Apr. 27, 2023)

However, distinguishing between minor annoyances and material adverse actions is crucial here. While Rivera and Freud might suggest that certain policy changes are not adverse, they address situations where changes do not significantly impact employees' working conditions or performance. Ms. Sosa's medical condition requires frequent restroom access, which represents a critical health need rather than a simple inconvenience.

Despite the intent to provide equal access to restroom breaks, the bathroom policy disproportionately affected Ms. Sosa, who found herself needing to ask multiple coworkers before receiving permission for a restroom break. In contrast, her colleagues had unhindered access, as confirmed in their depositions **(Exhibits MM).**

## VII. Health Considerations and Causal Link

Unlike the plaintiffs in Rivera and Freud, Ms. Sosa's urgent medical needs due to an ongoing infection require frequent restroom access. This direct link between her health condition and the necessity for timely bathroom breaks highlights the seriousness of her circumstance.

The timing of the policy change is also pivotal; it occurred shortly after Ms. Sosa filed a complaint with the NYC City Division of Human Rights (CCHR), raising suspicions about the intent behind the decision.

Additionally, the Appellees were informed of Ms. Sosa's urgent need for bathroom access just days before the implementation of the new rules. Given Ms. Sosa's documented anxiety and depression **(Exhibit E),** which were exacerbated by the changes, the timing of the policy's implementation further suggests retaliation.

Several cases illustrate that restrictions on an employee's ability to manage health-related needs can qualify as adverse retaliatory actions. **In Crawford v. Metro Nashville Public Schools, 555 F.3d 242 (6th Cir. 2009),** the court ruled that actions limiting an employee's ability to address medical needs could be considered materially adverse.
Similarly, in **Morris v. Oldham County Fiscal Court, 201 F.3d 784 (6th Cir.),** the court found that changes affecting an employee's ability to manage health issues could be classified as retaliation, particularly if they contribute to a hostile work environment or impede necessary medical accommodations.

These precedents underscore that Ms. Sosa's situation markedly differs from those in **Rivera** and **Freud.** Her anxiety and depression, compounded by her urgent need for bathroom access, escalate her circumstances beyond mere annoyance.

Despite the Appellees' claims that employees can request another teacher to oversee their students while taking bathroom breaks, Ms. Sosa faces a disproportionate burden in accessing the restroom.

On one occasion, she had to ask three different co-workers before finding someone willing to assist her, leading to physical discomfort and significant mental stress. The anxiety associated with navigating the approval process for a basic necessity creates a hostile environment that detracts from her focus and productivity.

## VIII. Conclusion

The collective evidence and circumstances surrounding the bathroom policy change clearly indicate that the Appellees' actions were rooted in retaliatory motives and a disregard for Ms. Sosa's medical needs. Therefore, we respectfully request that the court reverse the District Court's ruling. This correction will serve justice for Ms. Sosa and uphold employee rights against unlawful discrimination and retaliation.

## VIII. Conclusion and Request for Relief

In consideration of the evidence and the circumstances surrounding the bathroom policy change, it is clear that the Appellees' actions were rooted in retaliatory motives and a disregard for Ms. Sosa's medical needs. Therefore, we respectfully request that the court reverse the District Court's ruling. Correcting this decision will serve justice for Ms. Sosa and reinforce the importance of upholding employee rights against unlawful discrimination and retaliation.

Respectfully Submitted

Alice Sosa

Prose

Plaintiff- Appellant

## CERTIFICATE OF COMPLIANCE

I, Alice Sosa, certify that this brief contains 7,000 words or less. It contains 5,408 words.



# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:

*Sasa*

**CERTIFICATE OF SERVICE**\*

Docket Number: 241396

*New York City Department of Education et al*
*Mercy Berger*

I, *Alice Sasa*, hereby certify under penalty of perjury that
(print name)

on *01/16/2025*, I served a copy of *Reply Brief*
(date)

(list all documents)

by (select all applicable)\*\*

___ Personal Delivery          X United States Mail          ___ Federal Express or other
                                                                Overnight Courier

___ Commercial Carrier       ___ E-Mail (on consent)

on the following parties: *New York City Law Department*

*Philiph W Ying   100 Church Street NY NY 10007*
Name *C/O Mercy Berger*  Address  *New York City Law Department*  State  Zip Code

*Jamison Davies   100 New York City Law Department 10007*
Name          Address          City          State          Zip Code

Name          Address          City          State          Zip Code

Name          Address          City          State          Zip Code

\*A party must serve a copy of each paper on the other parties, or their counsel, to the appeal or
proceeding. The Court will reject papers for filing if a certificate of service is not simultaneously
filed.

\*\*If different methods of service have been used on different parties, please complete a separate
certificate of service for each party.

*01/16/2025*
Today's Date                    Signature

Certificate of Service Form (Last Revised 12/2015)

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:

Sasa

**CERTIFICATE OF SERVICE**[*]

Docket Number: 24 1396

New York City Department of Education et al
Mercy Berges

I, Alice Sasa , hereby certify under penalty of perjury that
on 01|16|2025 , I served a copy of Reply Brief
(date)

_____
(list all documents)

by (select all applicable)[**]

___ Personal Delivery ✗ United States Mail ___ Federal Express or other
Overnight Courier

___ Commercial Carrier ___ E-Mail (on consent) New York City Law Department
on the following parties:

Philiph W Yung 100 church Street NY NY 10007

| Name c/o Mercy | Address | City | State | Zip Code |
|---|---|---|---|---|
| Jamison Davies | New York City Law Dep't 100 Church Street | NY | NY | 10007 |
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |

[*]A party must serve a copy of each paper on the other parties, or their counsel, to the appeal or proceeding. The Court will reject papers for filing if a certificate of service is not simultaneously filed.

[**]If different methods of service have been used on different parties, please complete a separate certificate of service for each party.

01|16|2025
Today's Date

_____
Signature

Certificate of Service Form (Last Revised 12/2015)



Retail

**FOR DOMESTIC AND I**
**PLACE MAILING**

PMC
BAYSIDE, NY 1130
JAN 16, 2025

10007

**$33.05**

S2324E503212-10

- Guaranteed delivery date.*
- Guaranteed delivery time.‡
- USPS Tracking® service included for domestic and many international destinations.

RDC 07

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express® shipments. Misuse may be a violation of federal law. This package is not for resale. EP13C © U.S. Postal Service; July 2022. All rights reserved.



**UNITED STATES POSTAL SERVICE®**

**PRIORITY MAIL EXPRESS®**

ER 154 746 425 US

ply)**

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)   PHONE ( )

Alice Sosa
204-12 45 Rd
Bayside Ny 11361

**PAYMENT BY ACCOUNT (if applicable)**
Federal Agency Acct. No. or Postal Service™ Acct. No.

**ORIGIN (POSTAL SERVICE USE ONLY)**

☐ 1-Day   ☐ 2-Day   ☐ Military   ☐ DPO

PO ZIP Code: 11361   Scheduled Delivery Date (MM/DD/YY): 1/17/25   Postage: $ 33.05

**DELIVERY OPTIONS (Customer Use Only)**
☐ SIGNATURE REQUIRED *Note:* The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

Date Accepted (MM/DD/YY): 1/16/25   Scheduled Delivery Time: ☐ 12:00 PM ☑ 6 PM   Insurance Fee: $   COD Fee: $

**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

Time Accepted: 1:45 ☐ AM ☑ PM   Return Receipt Fee: $   Live Animal Transportation Fee: $

TO: (PLEASE PRINT)   PHONE ( )

United states Court
of Appeals for the second Circuit
40 Foley Square Circuit
Ny NY 10007

Special Handling/Fragile   Sunday/Holiday Premium Fee: $   Total Postage & Fees: $ 33.05

Weight: 2 lbs. 2 ozs.   ☐ Flat Rate   Acceptance Employee Initials:

ZIP + 4® (U.S. ADDRESSES ONLY)

**DELIVERY (POSTAL SERVICE USE ONLY)**
Delivery Attempt (MM/DD/YY)   Time ☐ AM ☐ PM   Employee Signature
Delivery Attempt (MM/DD/YY)   Time ☐ AM ☐ PM   Employee Signature

- For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
- $100.00 insurance included.

LABEL 11-B, NOVEMBER 2023   PSN 7690-02-000-9996

**PEEL FROM THIS CORNER**

132900

EP13C July 2022
OD: 15 x 11.625

  

**UNITED STATES POSTAL SERVICE®**



DuPont™ Tyvek®
Protect What's Inside™.